IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TARRIUS HOLT, AIS# 320531, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CIV. A. NO. 24-00255-TFM-MU |
| JEFFREY GRAY, | ) ) ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Tarrius Holt, an Alabama prison inmate proceeding without counsel, filed a complaint under 42 U.S.C. § 1983. (Doc. 1). This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). (*See* Doc. 3). Before the Court is Defendant's Motion for Summary Judgment. (Doc. 19). For the reasons discussed below, Defendant Lieutenant Jeffrey Gray's motion for summary judgment should be **GRANTED**, and this action be dismissed with prejudice in its entirety.

**I. Background and Factual Allegations**[1]

Plaintiff Holt filed this action against Defendant Lieutenant Jeffrey Gray, alleging that Gray, a correctional officer, violated his constitutional rights by failing to protect him from an inmate attack where he was stabbed multiple times at G.K. Fountain Correctional Facility on or about March 19, 2024.[2] Because Plaintiff's complaint was

---

[1] The undersigned notes the "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v. City of Riveria Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000).
[2] Plaintiff Holt alleges in his complaint that he was attacked on March 24, 2024. (*See* Doc. 1). However, the record produced by Defendant reflects, and Holt has not

signed under penalty of perjury (*see* Doc. 1 at 7), the Court will consider the factual allegations in the complaint in ruling on the motion for summary judgment. *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (per curiam).

According to Holt, he was moved from the Annex building to G.K. Fountain Facility ("Fountain") on March 15, 2024. At that time, he informed Lt. Gray "that he couldn't be housed in 4-cell because he previously had a bad situation there and was moved." (Doc. 1 at 4). He claims Lt. Gray responded, "I been doing this shit longer than you been living, you going exactly where I send you!" (*Id.*). Holt was placed in 4-cell and later stabbed five times from behind while using the restroom. Holt further alleges that Officer Boggan[3] witnessed him trying to notify Lt. Gray, on March 15, 2024 (around 3:30 p.m.), that he should not be put in 4-cell. Holt also claims that Lt. Gray admitted to Captain Knight that Holt "tried to tell him that he couldn't be housed in 4-cell." (*Id*. at 5).

Defendant Lt. Gray has answered the complaint filed against him, denied the allegations asserted against him, asserted various immunity defenses, and submitted a special report in support of his position which includes personal affidavits, institutional records, and medical records. (*See* Docs. 17, 18). While Lt. Gray testifies that he has no recollection of the incident alleged by Plaintiff (Doc. 17-1), the record submitted provides more details.

The record reflects that on March 19, 2024, Correctional Lieutenant Joseph Zeigler was assigned as the commander of second shift at Fountain. (*See* Doc. 17-2). At approximately 7:10 p.m., Holt was seen standing at the grill gate of Dormitory I

---

disputed, that the incident of this complaint occurred on March 19, 2024. For this reason, the undersigned will reference March 19, 2024, as the date of the incident.
[3] Incorrectly called "Sgt." Boggan in Holt's complaint. (*See* Doc. 1).

2

yelling "get me out of here." (*Id*.). Lieutenant Zeigler instructed Senior Correctional Officer Cornelius Gaines to open the gate and retrieve Holt. Holt advised Officer Gaines that he needed medical attention, and Holt was escorted to the infirmary. (*Id*.). In the infirmary, Holt was assessed and five puncture wounds to Holt's back were discovered. (Doc. 17-3 at 1). Holt remained in the infirmary on 23-hour observation. (*Id*.). Following the attack, Holt refused to identify the inmate or inmates involved in the incident but did provide a written statement. (Doc. 17-2). In his written statement, Holt stated:

> I . . . was using the restroom [when the attack occurred]; so I didn't see who attacked me. But it was due to a situation that's going to follow me whilst here at GK Fountain. Can I please be moved away from here. I got a paper trail on this before I went to Annex I wrote my case worker, the captain, and warden and asked to not be sent to Annex but was still sent and was the cause of this situation.

(Doc. 17-3 at 2).

The record further reflects that Holt had no validated enemies at Fountain on March 15, 2024, and Captain Willie Knight testified that Lt. Gray did not tell him that Holt had enemies in I-Dorm or "4 cell" as it was referenced in Holt's complaint. (Doc. 17-4). According to Captain Knight, Holt had been transferred from M-Dorm to general population pending a disciplinary action. (*Id*.; *see also* Doc. 17-5). Additionally, the record shows that Officer Boggan was not at Fountain on March 15, 2024, but instead, Officer Boggan was out on annual leave for eight consecutive weeks from Monday, February 26, through Friday, April 19, 2024. (*See* Doc. 17-6 at 2-3).

Based on the record, the Court converted Defendant's answer and special report to a motion for summary judgment. (Doc. 19). Plaintiff Holt was notified of the motion, instructed on how to respond to the motion, and cautioned as to the effect of summary

judgment. (Docs. 19, 21). To date, however, Plaintiff Holt has failed to respond to Defendant's motion for summary judgment.

## II. <u>Standard of Review</u>

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis omitted).

Defendant, as the party seeking summary judgment, bears "the initial responsibility of informing the district court of the basis for [his] motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [he] believes demonstrate the absence of a genuine issue of material fact." *Clarke v. Coats Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If Plaintiff, the nonmoving party, fails to make "a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," Defendant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. In assessing whether Plaintiff has met his burden, "the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. . . . Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992). The requirement to view the facts in the nonmoving party's favor extends only to "genuine"

disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to material facts." *Garczynski*, 573 F.3d at 1165 (citation and internal quotation marks omitted). "A 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment." *Id*. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Discussion and Analysis

#### A. Eleventh Amendment Immunity Defense

To the extent Plaintiff attempts to sue Defendant in his official capacity as an Alabama Department of Corrections officer and seeks any type of monetary award, Defendant is entitled to absolute immunity from suit, as official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.

> Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

*Id.* (quoting in large measure *Lancaster v. Monroe Cnty*, 116 F.3d 1419, 1429 (11th Cir. 1997)). Accordingly, Defendant, who is employed by the State of Alabama, is entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from him in his official capacity. *See Lancaster*, 116 F.3d at 1429.

### B. Qualified Immunity Defense

Defendant further contends, to the extent he is sued in his individual capacity, that he is entitled to qualified immunity because Plaintiff cannot prevail on a deliberate indifference claim under the Eighth Amendment. (Docs. 17, 18). "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Marbury v. Warden*, 936 F3d 1227, 1232 (11th Cir. 2019) (citation omitted). Since there is no dispute that Defendant in this action was acting within his discretionary authority when the acts in question occurred, the burden shifts to Plaintiff to show that Defendant violated a constitutional right and that the right was clearly established at the time of the alleged violation. *Id.* As discussed below, Plaintiff has failed to establish here that Defendant Lt. Gray violated a constitutional right.

Holt seeks redress pursuant to 42 U.S.C. § 1983 for an alleged violation of his Eighth Amendment rights. (*See* Doc. 1). The Eighth Amendment, applicable to the states through the Fourteenth Amendment, governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. *Estelle v. Gamble*, 429 U.S. 97, 101 (1976); *see also Bass v. Perrin*, 170 F.3d 1312, 1316 (11th

Cir. 1999). "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Additionally, "[b]eyond just restraining prison officials from inflicting 'cruel and unusual punishments' upon inmates, '[t]he Amendment also imposes duties on these officials, who must . . .' 'take reasonable measures to guarantee the safety of the inmates.'" *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1319-20 (11th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

Under the Eighth Amendment, prison officials have a duty to "ensure reasonable safety" of inmates, "a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer*, 511 U.S. at 844-845. However, "a prison custodian is not the guarantor of a prisoner's safety," *Purcell ex rel. Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (citation omitted), and "[i]t is not[ ] every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. While prison officials must "take reasonable measures to guarantee the safety of the inmates," *Hudson*, 468 U.S. at 526-27, there is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not. . . ." *Farmer*, 511 U.S. at 838. It is a defendant's deliberate indifference to a known, significant risk that violates the Eighth Amendment. *Lane v. Philbin*, 835 F. 3d 1302 (11th Cir. 2016).

"A prison official violates the Eighth Amendment 'when a substantial risk of serious harm, *of which the official is subjectively aware*, exists and the official does not respond reasonably to the risk.'" *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (emphasis in original) (citation omitted); *see also Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc) (finding even where a defendant knows of a substantial risk to an inmates health and safety, he can only be found constitutionally liable if he fails to "reasonably respond to the risk"). Thus, to survive summary judgment on a failure-to-protect claim, a plaintiff must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (per curiam) (quotation omitted).

The first element — a substantial risk of serious harm — is measured against an objective standard. *Caldwell*, 748 F.3d at 1099. Under this standard, the alleged condition must be "so extreme that it poses an unreasonable risk of serious damage to the prisoner's health or safety." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam). The second element — the prison official's deliberate indifference to the risk — "has both a subjective and an objective component." *Marbury v. Warden*, 936 F3d 1227, 1233 (11th Cir. 2019). "To satisfy the subjective component, a plaintiff must produce evidence that the defendant 'actually (subjectively) knew that an inmate faced a substantial risk of serious harm.'" *Caldwell*, 748 F.3d at 1099 (citation and alterations omitted). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. To meet the objective component, a plaintiff must

8

produce evidence that the defendant disregarded the known substantial risk by failing to respond to it in an objectively reasonable manner. *Caldwell*, 748 F.3d at 1099. "The known risk of injury must be 'a strong likelihood, rather than a mere possibility' before a [prison official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam) (citations omitted). Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983[.]" *Id.* The third element — causation — requires a plaintiff to demonstrate a link between a defendant's act or omission and the excessive risk of harm, and a link between the risk of harm and the plaintiff's injury. *LaMarca v. Turner*, 995 F.2d 1526, 1538-39 (11th Cir. 1993).

For purposes of this motion, the Court takes as true Holt's allegation that on March 15, 2024, he told Lt. Gray "that he couldn't be housed in 4-cell because he previously had a bad situation there" (Doc. 1 at 4), but Lt. Gray placed him in 4-cell (or Dormitory I) anyway. Based on the record, this statement is simply insufficient to establish that Lt. Gray subjectively knew or should have inferred that Holt faced a substantial risk of serious harm before he was attacked in 4-cell.

To start, the parties do not dispute that Holt had no documented enemies prior to the March 19, 2024 incident. (Notably, even after the assault, Holt did not identify his attacker by name or specify with whom he had a previously "bad situation," and neither did he provide these specifics in his complaint.). And Holt has presented no allegations, much less evidence, that 4-cell (or Dormitory I) posed an objectively substantial serious risk of harm to him because of violent, unsafe, or unsecure conditions. *Cf., Purcell ex rel. Estate of Morgan v. Toombs Cty.*, 400 F.3d 1313, 1320 (11th Cir. 2005) (finding a

generalized threat may create a substantial risk of serious harm where prison violence is "the norm or something close to it," but "occasional, isolated attacks by one prisoner on another" are insufficient). There is also no evidence that Holt reported any further threats of harm or fears of danger in the days between being moved to 4-cell on March 15 and the attack on March 19, 2024. Moreover, Holt's statement to Lt. Gray, alone, does not indicate a specific or particularized threat of harm to Holt necessary to establish subjective knowledge that Holt faced a serious risk of harm. *See Carter v. Galloway*, 352 F.3d 1346 (11th Cir. 2003) (requiring more than a mere awareness of harm before defendant may be culpable); *McBride v. Rivers*, 170 F. App'x 648 (11th Cir.2006) (per curium) (requiring a plaintiff to state a specific prior incident from which a defendant could infer a substantial risk existed to hold defendant liable).

The Eleventh Circuit explained in *Carter*, that in determining the subjective knowledge of a defendant, courts are to inquire whether the defendant was aware of a "particularized threat or fear felt by [the plaintiff]." 352 F.3d at 1350. In that case, Inmate Carter, a "Level 1" (best-behaved) inmate with no history of violence while in prison, sued correctional officials after he was assaulted by a close-security "Level 5" (worst behaved) inmate with whom he shared a cell, and who was pending reclassification to maximum-security status. Although the defendants "clearly knew that [the Level 5] inmate Barnes was a 'problem inmate' with a well-documented history of prison disobedience and had been prone to violence," and although they also had "specific notice from Plaintiff that Inmate Barnes acted crazy, roaming his cell like a 'caged animal,' " this was not enough to show that defendants were deliberately indifferent to a substantial risk of serious harm. 352 F.3d at 1349-1350. The Court found any "negligent

failure" of the defendants to protect the plaintiff from attack did not create the sufficiently culpable state of mind necessary to satisfy the subjective awareness requirement. *Id.* at 1350. Instead, to find defendants culpable, based on their awareness of Barnes' "propensity for being a problematic inmate," would "unduly reduce awareness to a more objective standard, rather than the required subjective standard set by the Supreme Court." *Id.*; *see also Johnson v. Boyd*, 568 F. App'x 719, 722 (11th Cir. 2014) (attacker's destructive behavior in cell prior to attack did not sufficiently show a "strong likelihood" of injury to plaintiff).

Similarly in *McBride*, the plaintiff inmate claimed that the defendants knew the risk of serious harm in placing him in the same cell as his inmate attacker, because before being placed in the cell, he told the defendant officers "that he feared for his life," stating, "'me and that dude had problems. I'm in fear for my life. Don't put me in the cell with him.'" 170 F. App'x at 655. The Eleventh Circuit found this statement represented a "general request" that he not be placed "with anyone whom he might have problems." *Id*. Accordingly, the Court determined that the plaintiff "did not identify a specific prior incident, from which the defendant could infer that a substantial risk existed" and thus "failed to show that the defendants had subjective knowledge of a risk of serious harm." *Id.* (citing *Carter,* 352 F.3d at 1349).

This stringent standard was reexamined and upheld by the Eleventh Circuit in *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (discussing "[t]he unfortunate reality [ ] that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm.") (internal quotation and citation omitted). In *Marbury,* the Court confirmed the necessity

11

of showing knowledge of a specific threat of harm, rather "than a generalized awareness of risk", to make out a deliberate indifference claim. The Court concluded defendant officers were not deliberately indifferent to the plaintiff's safety, despite the plaintiff repeatedly asking to be transferred to the segregation unit because he was concerned about a general lack of safety in his cellblock (where he witnessed 15 inmate-on-inmate stabbings in approximately 6 months). Additionally, the plaintiff's statement that a friend told him an unnamed inmate intended to hurt him was insufficient to put the defendants on notice of a specific and substantial risk of serious harm, and the warden's alleged callous jokes telling the prisoner to get a knife did not show she was aware of a substantial risk of serious harm.

Under the facts in this case, no reasonable jury could find Holt's statement to Lt. Gray sufficient to make Lt. Gray aware of a particularized and substantial risk or harm to Holt where Holt had no enemies listed, nor did he identify an actual threat made by an inmate or describe the previous incident to Lt. Gray in any detail. *See e.g., Chatham v. Adcock*, 334 F. App'x 281, 293 (11th Cir. 2009) (no deliberate indifference shown where plaintiff's fellow inmate was a "problem inmate" with "violent tendencies," and plaintiff asserted that fellow inmate threatened him repeatedly in days before assault, but did not identify any specific serious threat from fellow inmate which he then reported to any other corrections officer before the assault on him); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) ("[T]he allegations of [plaintiff's] complaint do not show the requisite subjective knowledge of a risk of serious harm, and, thus, do not state a claim for deliberate indifference resulting from a failure to protect from the attack by [a fellow inmate]."); *Woodyard v. Ala. Dep't of Corr.*, 700 F. App'x 927, 933 (11th Cir. 2017)

(threat to stab was insufficient where the two inmates had no history of altercations and no reports of widespread violence), *but cf., Rodriguez v. Sec'y for the Dep't of Corr.*, 508 F.3d 611 (11th Cir. 2007) (allegation that inmate informed several guards that he had been threatened by his former gang and that he feared they would kill him when he was released into the general population was sufficient to overcome summary judgment because a reasonable jury could find that the defendant officers were aware that the plaintiff inmate faced a substantial risk of serious harm from his former gang members after renouncing his membership). Without knowledge of details of a threat to enable Lt. Gray to conclude that a 'strong likelihood' of injury exists, not a 'mere possibility' of harm, e.g., *Brooks v. Powell*, 800 F.3d 1295, 1301 (11th Cir. 2015)), he cannot be held liable for failing to protect Holt from the March 19, 2024 inmate attack.

Following Circuit precedent, the Court concludes that Holt's allegations lack specific threats or details sufficient to show that Lt. Gray was aware that Holt faced a substantial risk of serious harm, rather than a general risk, from being placed in 4-cell on March 15, 2024. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) ("Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.' *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).'"). Holt has not shown that Lt. Gray was put on notice that Holt faced the type of substantial risk of serious harm necessary to establish deliberate indifference; therefore, Holt cannot prevail on his claim that Gray violated his Eight Amendment rights. Because Plaintiff cannot prove a constitutional violation, Defendant Lt. Gray is entitled to qualified immunity.

## IV. Conclusion

For the reasons stated above, it is **RECOMMENDED** that summary judgment be **GRANTED** in favor of Defendant Lieutenant Jeffrey Gray as to the claims asserted against him and that this action be **DISMISSED**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **2nd** day of **July, 2025**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**